IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| VICTOR CARTER, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-01382-O |
| § | |
| ROLLIE TRANSPORT INC., et al., § | |
| § | |
| Defendants. § | |

### **OPINION & ORDER**

This case presents a complex question of bankruptcy law nested within an otherwise routine vehicle collision dispute. In their Motion for Summary Judgment as to Plaintiff Victor Carter (the "Motion") (ECF No. 17), filed September 21, 2022, Defendants argue that Plaintiff Carter should be judicially estopped from pursuing his personal injury claims here, since he failed to disclose those claims during a previous, and recently re-opened, bankruptcy proceeding. Plaintiff Carter filed his Response (ECF No. 20) on October 12, 2022, and Defendants filed their Reply (ECF No. 24) on October 18, 2022. As such, the Motion is now ripe for review.

Having reviewed the briefing, evidence, and applicable caselaw, the Court determines that Defendants' Motion for Summary Judgment as to Plaintiff Victor Carter (ECF No. 17) should be **GRANTED in part** and **DENIED in part**. The Court finds that Plaintiff Carter should be judicially estopped from pursuing his personal injury claims here, given his prior failure to disclose those claims to the bankruptcy court. However, the Court does not agree with Defendants' assertion that Plaintiff Carter's claims should be immediately dismissed with prejudice. Instead, the Court finds that the Trustee of Carter's bankruptcy estate should have the opportunity to pursue or waive Carter's personal injury claims.

## BACKGROUND[1]

In addition to knowledge of the facts of the present lawsuit, Defendants' Motion demands familiarity with two separate bankruptcy cases filed by Plaintiff Victor Carter.

First, Plaintiff Victor Carter filed a voluntary bankruptcy petition under Chapter 13 in the Bankruptcy Court for the Northern District of Texas on August 6, 2012 (the "2012 Bankruptcy"). On December 23, 2013, Carter's bankruptcy was converted to a Chapter 7 bankruptcy. Carter obtained a discharge in his Chapter 7 bankruptcy on March 31, 2014.

Two years later, Carter filed another voluntary bankruptcy petition under Chapter 13 in the Bankruptcy Court for the Northern District of Texas on April 4, 2016 (the "2016 Bankruptcy"). But since Carter had received a discharge of debts in the 2012 Bankruptcy under Chapter 7 during the four-year period preceding his Chapter 13 filing, Carter was not, and is not, eligible for a discharge in his 2016 Bankruptcy. *See* 11 U.S.C. §1328(f)(1).

Four years after filing the 2016 Bankruptcy, and while it was still open, Carter and his wife, Plaintiff Tracy Sarter, were involved in an alleged vehicle collision with a commercial truck owned by Defendant Rollie Transport, Inc. and driven by Defendant Roleadis Saiz Villavicencio. This February 16, 2020 collision is the basis for the instant lawsuit.

On March 10, 2020, about a month after the accident, Carter retained counsel and notified Defendants' insurer that he would be seeking compensation for personal injuries due to the crash.[2]

Approximately two weeks after that, Carter filed an amended schedule of assets in the 2016 Bankruptcy on March 25, 2020, but he did not list the personal injury claims on that amended

---

[1] Nearly all the relevant facts pertaining to Defendants' Motion are undisputed. Accordingly, the Court draws from the briefing submitted by both parties for this recitation of the factual background, unless otherwise specified. *See* Br. in Supp. of Defs.' Mot. 1–2, ECF No. 18; Pl.'s Resp. Br. 2–3, ECF No. 21.
[2] Defs.' App. at 74, Ex. G, ECF No. 19 at 74.

schedule.[3] The 2016 Bankruptcy continued for another twenty months, yet Carter never notified the bankruptcy court of his personal injury claims during that period. The 2016 Bankruptcy was eventually closed on November 10, 2021, but Carter did not receive a discharge of his debts due to the aforementioned limitations on successive discharges imposed by 11 U.S.C. §1328(f)(1).

Eight days after the 2016 Bankruptcy closed, Carter filed this lawsuit on November 18, 2021. On February 7, 2022, Defendants filed their Original Answer, but they did not list judicial estoppel as an affirmative defense. The instant Motion for Summary Judgment as to Plaintiff Victor Carter, filed on September 21, 2022, raised the issue of judicial estoppel for the first time.

One day after all the briefing for this Motion was submitted, Carter petitioned the bankruptcy court to re-open the 2016 Bankruptcy on October 19, 2022.[4] The bankruptcy Trustee opposed re-opening the 2016 Bankruptcy and agreed with Defendants that judicial estoppel should apply.[5] Nevertheless, after hearing oral argument, the bankruptcy court officially re-opened the 2016 Bankruptcy on November 15, 2022.[6] About a week later, on November 21, 2022, Carter filed amended bankruptcy schedules which listed his personal injury claims and thus formally notified the bankruptcy court of those claims for the first time.[7]

## LEGAL STANDARDS

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed 'to secure the just,

---

[3] Defs.' App. at 62–68, Ex. D, ECF No. 19 at 62–68.
[4] Mot. for Continuance ¶¶ 7–10, ECF No. 62.
[5] *Id.*
[6] *Id.*
[7] *Id.*

speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250. "[Y]et the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (cleaned up). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Id.*

## ANALYSIS

### A.   Carter Must Be Judicially Estopped From Pursuing His Personal Injury Claims

In their briefing, the parties spar over the nature of judicial estoppel, the disclosure obligations of debtors involved with bankruptcy, the legal justifications for imposing judicial estoppel in this case, and the equitable justifications for enforcing judicial estoppel here. The Court

addresses each of these issues below and resolves all of them in favor of judicially estopping Plaintiff Carter from pursuing his personal injury claims.

    1. <u>Judicial estoppel is an equitable remedy that the Court may impose in its discretion.</u>

Both sides advocate for internally inconsistent views of judicial estoppel in their briefing. Defendants suggest that they are entitled to judgment as a matter of law due to the strictures of judicial estoppel doctrine, but they also argue that they have not waived judicial estoppel since it is an equitable doctrine that can be raised by the Court *sua sponte* even if it is not advanced as an affirmative defense.[8] Conversely, Plaintiff contends that a court is never bound to impose judicial estoppel due to the equitable nature of the remedy, while also positing that Defendants have forever waived their right to invoke judicial estoppel since they did not raise it as an affirmative defense in their Original Answer.[9] Rather than wade through all these competing claims, the Court chooses to articulate the following definition of judicial estoppel that guides its analysis.

As the Fifth Circuit explained in *Allen v. C & H Distributors, L.L.C.*, "[j]udicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation. The doctrine's purpose is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." 813 F.3d 566, 572 (5th Cir. 2015) (cleaned up). Furthermore, "[b]ecause judicial estoppel is an equitable doctrine, courts may apply it flexibly to achieve substantial justice." *Reed v. City of Arlington,* 650 F.3d 571, 576 (5th Cir. 2011) (en banc). Indeed, "judicial estoppel is not governed by inflexible prerequisites or an exhaustive formula for determining its applicability, and numerous considerations may inform the doctrine's application in specific factual contexts." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (cleaned up). Ultimately, "the challenge is to fashion

---

[8] Defs.' Mot. 1, ECF No. 17; Defs.' Reply Br. 1–2, ECF No. 25.
[9] Pl.'s Resp. Br. 4–7, ECF No. 21.

a remedy that does not do inequity by punishing the innocent." *Allen*, 813 F.3d at 575 (cleaned up) (quoting *Reed,* 650 F.3d at 576).

Based on these precedents, the Court takes note of the equitable nature of judicial estoppel and determines that judicial estoppel is neither waived nor mandated in this case. This determination is undisturbed by the timing of Defendants' Motion. In fact, the district court in *Allen* also considered the issue of judicial estoppel for the first time through a motion for summary judgment, even when the motion in that case was both late and supplemental. *See Allen*, 813 F.3d at 571. Therefore, the Court concludes that the issue of judicial estoppel is properly presented, so the Court continues with its analysis.

2. <u>Debtors are obligated to disclose post-confirmation assets to the bankruptcy court.</u>

Given the equitable nature of judicial estoppel, it would not be fair to punish a litigant for failing to disclose claims that they were never obligated to reveal in the first place. Seizing this line of reasoning, Plaintiff Carter contends that he was never obligated to disclose his personal injury claims to the bankruptcy court since those claims accrued after the initial confirmation of his bankruptcy plan.[10] Plaintiff is incorrect.

Although Plaintiff asserts that the obligation to disclose post-confirmation assets in bankruptcy is an open question in the law, there is now ample precedent that resolves the matter.[11] As the Fifth Circuit stated in *Love*, "The Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated

---

[10] Pl.'s Resp. 7–8, ECF No. 21.

[11] The Court does not hold this mistake against Plaintiff. As Judge Terry Means has previously remarked, "The bankruptcy code in its entirety is not like other legislation; it is highly technical and its comprehension requires a specific expertise not possessed by most lay persons and often, not possessed by competent lawyers." *Woodard v. Taco Bueno Restaurants, Inc.*, No. 4:05-CV-804-Y, 2006 WL 3542693, at *11 (N.D. Tex. Dec. 8, 2006). Moreover, when Judge Means wrote those words, the question of post-confirmation asset disclosure had arguably not yet been resolved by the Fifth Circuit.

claims. The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one. The disclosure requirement pertains to potential causes of action as well." 677 F.3d at 261 (cleaned up). That *Love* decision drew upon prior Fifth Circuit precedent and was itself further reinforced in *Allen*. In *Allen*, the Fifth Circuit affirmed a district court that had judicially estopped a debtor who had failed to disclose personal injury claims that arose after confirmation, but before closure, of their prior bankruptcy proceedings. 813 F.3d at 575–76.

Therefore, Plaintiff Carter did have an obligation to disclose the instant personal injury claims to the bankruptcy court, even though those claims accrued after the initial confirmation of his bankruptcy plan. Additionally, Carter's failure to make that required disclosure exposes him to judicial estoppel in the present suit.

    3.  <u>The three elements of judicial estoppel are met in this case.</u>

Although judicial estoppel is an equitable doctrine, it does have three elements which guide courts in its application. Those elements are: "(1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013). All three elements are present here.

First, Plaintiff Carter's position in this suit is plainly inconsistent with the position he previously took in his bankruptcy. Namely, Carter now purports to possess personal injury claims when he did not acknowledge those same claims during his bankruptcy. Plaintiff's only defense on this point is that he did not have to disclose his claims due to the allegedly unsettled law surrounding disclosure of post-confirmation assets.[12] But the Court already explained why that view is incorrect. *See* section A(2), *supra*. Therefore, given a debtor's obligation to disclose post-

---

[12] Pl.'s Resp. Br. 8–9, ECF No. 21.

confirmation assets during bankruptcy, Carter's sin of omission is tantamount to an affirmative—and erroneous—assertion that he possessed no personal injury claims during the pendency of the 2016 Bankruptcy.

Second, the bankruptcy court accepted Carter's prior position that he did not possess any personal injury claims. Arguing against this conclusion, Carter asserts that the bankruptcy court never accepted his denial of personal injury claims since he never received a discharge of debts through the 2016 Bankruptcy.[13] But much like Carter, neither of the debtors in *Allen* and *In re Flugence* were discharged from bankruptcy, yet the Fifth Circuit still upheld judicial estoppel against both of them for failing to disclose their respective personal injury claims. *See In re Flugence*, 738 F.3d at 132; *Allen*, 813 F.3d at 757–76. Moreover, after the collision which gave rise to Carter's personal injury claims, Carter submitted—and the bankruptcy court accepted—an amended schedule of assets which disclosed Carter's updated financial information but made no mention of his newfound personal injury claims.[14] And finally, after the submission of Carter's amended schedule, the bankruptcy court continued to administer Carter's payment plan for over a year—in reliance on the fact that he lacked any other assets with which to repay creditors—before eventually closing the matter, albeit without discharge. Taken together, the bankruptcy court clearly accepted Carter's assertion that he lacked personal injury claims during the pendency of the 2016 Bankruptcy.

Third, Carter's failure to disclose his personal injury claims was not inadvertent. Denying this element, Plaintiff contends that he was simply ignorant of his disclosure obligations and lacked any invidious motive to conceal his personal injury claims since he knew that he would always be ineligible for discharge of his debts. Plaintiff's arguments mirror the applicable caselaw which

---

[13] Pl.'s Resp. Br. 9, ECF No. 21.
[14] Defs.' App. at 62–68, Ex. D, ECF No. 19 at 62–68.

maintains that "inadvertence exists only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 272 (5th Cir. 2015). But neither Plaintiff's supposed ignorance nor his lack of motive stand up to scrutiny.

Reviewing the record, Plaintiff knew that the bankruptcy court cared about potential civil claims since the form for his initial schedule of assets included a space to list such claims.[15] Plaintiff also knew that he had at least some obligation to disclose post-confirmation assets given that he filed an amended schedule of assets about a month after the collision at issue here.[16] Additionally, Plaintiff knew that his personal injury claims might have monetary value since he retained a lawyer who notified Defendants of his intent to pursue compensation shortly before filing his amended schedule of assets.[17] And on top of all that, any lingering doubts about Plaintiff's purported ignorance of his situation are belied by the fact that he filed this personal injury suit a mere eight days after his 2016 Bankruptcy was closed. Plaintiff's motivations to conceal his claims are even more apparent: but for Defendants' Motion, Plaintiff may well have won a sizeable verdict at trial and left his creditors none the wiser.

Ultimately, Mr. Carter's knowledge of bankruptcy law—borne from years of personal experience with the bankruptcy system—may well outclass most attorneys, and the Court cannot accept his assertion that honest ignorance led him to inadvertently conceal his personal injury claims from the bankruptcy court. Therefore, the Court concludes that all three elements for judicial estoppel have been met in this case.

---

[15] Defs.' App. at 29, Ex. C, ECF No. 19 at 29.
[16] Defs.' App. at 62–68, Ex. D, ECF No. 19 at 62–68.
[17] Defs.' App. at 74, Ex. G, ECF No. 19 at 74.

### 4. Judicial estoppel is the most equitable remedy in this case.

As the Court has repeatedly emphasized, judicial estoppel is an equitable doctrine, so the Court concludes its analysis by reviewing the equities of the present situation. This review reinforces the conclusion that judicial estoppel against Plaintiff Carter is warranted.

At a fundamental level, "[j]udicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). Stated more expansively, "judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Reed,* 650 F.3d at 574. These precedents indicate that estoppel is generally warranted in situations such as this, and Plaintiff's protestations do not dislodge that conclusion.

As previously discussed, Plaintiff's assertions of honest ignorance fall flat, especially in light of Plaintiff's decision to file this lawsuit eight days after his bankruptcy was closed. Separately, Plaintiff also contends that revealing his personal injury claims to the bankruptcy wouldn't have made a difference. But the general duty to disclose assets to the bankruptcy court is not disturbed by a creditor's personal assessment that certain assets may be irrelevant. "Whether a particular asset should be available to satisfy creditors is often a contested issue, and the debtor's duty to disclose assets—even where he has a colorable theory for why those assets should be shielded from creditors—allows that issue to be decided as part of the orderly bankruptcy process." *In re Flugence*, 738 F.3d at 130. Put simply, Plaintiff had no right to withhold disclosure of his claims even if he genuinely thought they wouldn't make a difference. And though the Court is not positioned to fully consider alternate histories, at the very least, Plaintiff's timely disclosure of his

personal injury claims would have made a difference by altering the pool of available assets creditors may have been able to draw from.

Finally, Plaintiff cannot escape estoppel by re-opening his 2016 Bankruptcy and listing his personal injury claims in new amended schedules. "Allowing a debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." *U.S. ex rel. Long*, 798 F.3d at 273 n.6 (cleaned up). As previously referenced, had Defendants not raised this issue, Plaintiff might have walked away with a windfall in the upcoming trial and Plaintiff's creditors would be left empty-handed. Such a situation cuts against the core principles of bankruptcy law and should be disincentivized through the equitable use of judicial estoppel. Therefore, viewed holistically, the equities of this particular situation strongly support judicially estopping Plaintiff Carter from pursuing his own personal injury claims.

\*   \*   \*

Having considered the briefing, applicable law, and unique equities of this situation, the Court determines that Plaintiff should be **ESTOPPED** from pursuing his personal injury claims.

### B. The 2016 Bankruptcy Trustee Retains the Right to Pursue or Waive Carter's Personal Injury Claims

Since the Court has found that Plaintiff Carter should be judicially estopped from pursuing his personal injury claims, the Court must now decide how this matter ought to proceed. Defendants assert that Carter's claims should immediately be dismissed with prejudice.[18] Plaintiff contends that the Trustee of Carter's bankruptcy estate should first be allowed to pursue or waive Carter's personal injury claims.[19] The Court agrees with Plaintiff for the reasons set forth below.

---

[18] Defs.' Reply Br. 8–9, ECF No. 25.
[19] Pl.'s Resp. Br. 13–14, ECF No. 21.

Precedent dictates that the Trustee of Carter's bankruptcy estate should be allowed to pursue or waive Carter's claims. Indeed, the en banc Fifth Circuit has "state[d] a general rule that, absent unusual circumstances, an innocent trustee can pursue for the benefit of creditors a judgment or cause of action that the debtor fails to disclose in bankruptcy." *Reed,* 650 F.3d at 573. And as the Fifth Circuit further clarified, this general rule even allows trustees to pursue claims that a debtor "is himself estopped from pursuing." *Id*. at 579; *see also In re Flugence,* 738 F.3d at 132 (allowing a trustee to pursue a claim that the debtor is estopped from pursuing); *Allen*, 813 F.3d at 575 (same). Since the circumstances of this case closely mirror those in *Reed*, this Court likewise reaches a similar conclusion and holds that the Trustee of Carter's bankruptcy estate should be allowed to pursue or waive Carter's claims.

Defendants protest that allowing the Trustee to substitute in place of Carter would potentially undermine the integrity of the judicial process. But the language Defendants cite is from the dissent in *Reed*.[20] Evidently, the majority of the en banc Fifth Circuit disagreed with Defendants and instead elected to prioritize the rights of an innocent trustee when faced with these same questions of judicial efficiency. Furthermore, in *Allen*, the Fifth Circuit held that a trustee could pursue the estopped debtor's claims "within a reasonable period of time" even if that meant re-opening the bankruptcy and re-opening the district court lawsuit. *Allen*, 813 F.3d at 576. If the trustee had the right to substitute in for the plaintiff under those circumstances, then *a fortiari*, the Trustee for Carter's bankruptcy estate should have the option to substitute in here since Carter's bankruptcy has already been re-opened and this lawsuit is still very much alive. And as a final note, it is surely more efficient to allow the Trustee to substitute into this case on the eve of trial,

---

[20] Defs.' Reply Br. 8–9, ECF No. 25.

even though that may cause some disruptions, when the alternative would be relitigating essentially the same case a second time at a later date.

Overall, this Court's "approach protects the integrity of the bankruptcy system by deterring debtors from concealing assets while also being consistent with the core bankruptcy goal of obtaining a maximum and equitable distribution for creditors." *Id.* at 575 (cleaned up). But in fairness to Defendants, the Court is mindful of the judicial efficiency concerns at play here, and the Court has no interest in indefinitely delaying trial in this case. Accordingly, the Court shall give the Trustee a week to decide how to proceed. A similar seven-day decision period for a bankruptcy trustee—issued by this very court several years ago when faced with comparable circumstances—was upheld by the Fifth Circuit. *See U.S. ex rel. Long*, 798 F.3d at 276; *see also Allen*, 813 F.3d at 576 (approvingly citing the seven-day deliberation period from *Long*). Therefore, the Trustee of Carter's bankruptcy estate shall have seven days from the issuance of this Opinion & Order to elect whether to pursue or waive Carter's personal injury claims.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment as to Plaintiff Victor Carter (ECF No. 17) is hereby **GRANTED in part** and **DENIED in part**. Plaintiff Victor Carter is **ESTOPPED** from pursuing his personal injury claims. However, the Trustee of Carter's bankruptcy estate retains the right to either pursue or waive Carter's claims. Therefore, the Trustee **SHALL** inform the Court how it intends to proceed **no later than January 17, 2023 at 9:00 a.m.**

**SO ORDERED** on this **9th day** of **January, 2023**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**